595 A.2d 593

**COMMONWEALTH of Pennsylvania**

v.

**Troning Anthony LEWIS, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1991.

Filed July 23, 1991.

Petition for Allowance of Appeal Granted Dec. 16, 1991.

Frederick W. Ulrich and Wayne S. Melnick, Asst. Public Defenders, Harrisburg, for appellant.

Joseph H. Kleinfelter, Asst. Dist. Atty., Harrisburg, for Com.

Before TAMILIA, POPOVICH and HESTER, JJ.

HESTER, Judge:

Troning Anthony Lewis appeals from the July 25, 1990 judgment of sentence of four to ten years incarceration imposed by the Dauphin County Court of Common Pleas following his conviction by a jury of possession of cocaine with intent to deliver and conspiracy. In this appeal, which followed the trial court's denial of appellant's motion to modify sentence, appellant raises numerous assertions of trial error. We find no merit in appellant's arguments; accordingly, we affirm.

At the suppression hearing, the Commonwealth called two witnesses, Officer John W. Ciupinski and Detective Willie Holland. Officer Ciupinski, an Amtrak Police officer for fourteen years and a former township police officer for two years, described his duties as including the patrol of the main line of Amtrak between Lancaster and Harrisburg. At the time of appellant's arrest, Officer Ciupinski's department recently had undertaken an interdiction program using a "drug courier profile." In training for his assignment, Officer Ciupinski received a list of characteristics to identify suspected drug couriers. Those characteristics included: (1) individuals taking a train to a source city, such as New York; (2) payment for tickets in cash; (3) quick turnaround visits, i.e., making a return trip after staying only a brief time at the source city; (4) display of a large

amount of cash; (5) exhibition of nervous or apprehensive behavior; and (6) lack of luggage or packages.

Approximately one week prior to September 22, 1989, a ticket agent reported to Ciupinski that two black males were at his ticket window, had paid cash for their tickets, and requested round-trip tickets to New York City. Also, the individuals informed the ticket agent that they were not concerned about a price penalty for an open return since they desired to go to New York and return as soon as possible. In paying for the tickets, the agent further observed the suspects utilize a large roll of bills. In addition, they did not carry any luggage with them. The suspects were pointed out to Officer Ciupinski who observed them board the train.

On the morning of September 22, 1989, the same ticket agent informed Officer Ciupinski that the same two men were at his window again and paid for two-round trip tickets to New York with a quick return. Officer Ciupinski observed appellant and a companion, Eric Bradley, and noticed that Bradley in particular appeared extremely apprehensive. The officer watched them board the train and decided to approach them on their return trip. Officer Ciupinski arranged with other plain-clothes officers, including Detective Holland, to meet the first train from New York later that day. Upon the train's arrival, appellant and Bradley disembarked.

The plain-clothes officers approached appellant and Bradley as they entered the pedestrian bridge over the railroad tracks on their way to the main station and asked if both men would answer some questions. Appellant answered that he wished to speak to a lawyer. Detective Holland asked why appellant wished to do that when he was not even under arrest. Notes of Testimony ("N.T."), 2/6/90, at 60. In response to further questions, appellant admitted that he traveled frequently to New York because he had to meet regularly with his probation officer after a weapons conviction. Bradley explained that he was visiting relatives in Harrisburg and gave an address number that did not

exist. Detective Holland testified that Bradley backed away from the officers during questioning, and continually moved his hands around his waist.

At this point, the officers decided that a weapons search of both men was required for the officers' safety since: 1) the suspects matched a drug courier profile; 2) the suspects' answers were suspicious, especially in light of appellant's prior conviction involving a firearm; 3) Bradley's hand continually moved around his waist during questioning; and 4) Bradley appeared frightened when both of them were asked if they carried a firearm. The pat-down search revealed that appellant did not carry a weapon, but Bradley carried a handgun in his waistband concealed by his jacket. Both appellant and Bradley were placed under arrest for carrying a concealed weapon and conspiracy.

Police removed the two men to a private area in the station and gave them *Miranda* warnings. Appellant was searched incident to his arrest and a packet of cocaine was discovered inserted in his sock. During questioning, Bradley explained that he found the handgun on the train, and appellant admitted that both men purchased cocaine for $5,000 in New York and intended to sell it for $15,000 in Harrisburg. Appellant's omnibus pretrial motion to suppress the statements and the evidence after the stop was denied. This appeal followed imposition of sentence.

Appellant first argues that the trial court erred in not suppressing the fruits of an illegal search. Our standard of review for suppression issues is clear. We recently stated in *Commonwealth v. Lidge*, 399 Pa.Super. 360, 362–63, 582 A.2d 383, 384 (1990):

"In reviewing an order denying a motion to suppress evidence, this court must determine whether the factual findings of the suppression court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual

findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error." *Commonwealth v. Schneider,* 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989) (citations omitted).

Bearing these principles in mind, we address appellant's arguments. Appellant first argues that the facts relied upon by the officers as the basis to approach and question him were insufficient to justify the officers' behavior. Specifically, he contends that many travelers use cash rather than credit to purchase tickets and that a one day trip to New York is not uncommon. Appellant also asserts that it is not unusual for two people to travel together. Accordingly, he argues that none of the observations recited by the arresting officers, even taken together, rise above a subjective opinion or a hunch. In light of this, appellant contends that this is insufficient to initiate an investigatory stop. *See United States v. Buenaventura–Ariza,* 615 F.2d 29 (2nd Cir.1980) (facts must equate to an objective basis and not a subjective suspicion). We disagree.

First, we conclude that the officers' initial questioning of appellant and Bradley was not an investigatory stop under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Florida v. Bostick,* —— U.S. ——, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991), the Supreme Court held that police may approach persons at random, even on a bus, ask questions, and seek consent to search. Thus, the mere act by police of approaching appellant to ask questions does not constitute a *Terry* stop, and police did not require an articulable suspicion or probable cause to question appellant. *See also In Interest of Jermaine,* 399 Pa.Super 503, 509, 582 A.2d 1058, 1061 (1990), where we stated:

We adhere to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such a restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but "to prevent

arbitrary and oppressive interference by enforcement officers with the privacy and security of individuals." *United States v. Martinez-Fuerte*, 428 U.S. 543, 554, 49 L.Ed.2d 116, [1116], 96 S.Ct. 3074, 3081 (1976). As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

Under this reasoning, the officers' approach and request that appellant and Bradley answer some questions did not require particularized suspicion or probable cause. Appellant and Bradley could have declined to answer questions or talk with the officers. They chose instead to escape suspicion by answering questions. Consequently, we find *Florida v. Bostick, supra,* dispositive and reject appellant's argument.

■ Furthermore, even if an investigatory stop did occur, the United States Supreme Court recently upheld the utilization of "drug courier" profiles as a basis to stop and investigate suspected drug couriers in *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). There, the Court reviewed numerous factors displayed by the defendant that fit the drug courier profile which included: 1) he paid for his ticket in small bills from a large roll of bills; 2) the ticket name did not match his correct name; 3) his trip originated in Miami, a source city; 4) he stayed at his destination, Honolulu, for only forty-eight hours; 5) he appeared extremely nervous; and 6) he did not check any luggage for his trip. The Court then concluded that these facts taken together were a sufficient articulable reason for a stop, stating:

In evaluating the validity of a stop such as this, we must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). As we said in *Cortez:*

The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same—and so are law enforcement officers. *Id.*, at 418, 66 L.Ed.2d 621, 101 S.Ct. 690 [695].

. . . .

Any of these factors [in the case] is not by itself proof of any illegal conduct and is quite consistent with innocent travel. But we think taken together they amount to reasonable suspicion. *See Florida v. Royer*, 460 U.S. 491, 502, 103 S.Ct. 1319 [1326–27], 75 L.Ed.2d 229 (1983).

*Id.*, 490 U.S. at 8, 109 S.Ct. at 1585–86, 104 L.Ed.2d at 10–11.

Appellant seeks to distinguish this authority by noting that the circumstances of suspicion were considerably stronger in *United States v. Sokolow* than in this instance. There, the defendant and his companion paid for flights to Hawaii costing several thousand dollars in cash and then stayed only for forty-eight hours. Appellant, on the other hand, paid eighty-four dollars in cash and travelled to New York by train. He submits that this is much more likely to be innocent behavior. He asserts that this considerably weakens the officer's articulable suspicion in light of all the circumstances.

We reject appellant's argument. Although it might be more common to pay cash and remain a short while in New York, this does not negate the remaining indications that do give rise to a reasonable suspicion that they fit the drug courier profile. These indicia are: 1) appellant made the same trip the week before; 2) he travelled with the same nervous companion; 3) he had a large roll of cash when he paid; 4) he had no luggage; and 5) he gave misleading answers to police questions. We conclude that these factors, when combined, would have provided a reasonable basis to make an investigatory stop and fit within the guidelines of *United States v. Sokolow, supra. Accord*

*Commonwealth v. Lidge,* 399 Pa.Super. 360, 582 A.2d 383 (1990).

■ Appellant also seeks to suppress both the physical evidence and the statement made after his arrest in which he indicated that he purchased the cocaine in New York for resale. He also seeks suppression of Bradley's statement that he found the gun on the train. The basis for this claim is that he previously asked for a lawyer. Appellant first maintains that the police were required to stop all questioning of both men once he requested a lawyer. Appellant reasons that he was seized when the plain-clothes officers surrounded him on the pedestrian bridge with one exit and asked to speak with him. He argues that at this point he did not feel free to leave, citing *Commonwealth v. Duncan,* 514 Pa. 395, 525 A.2d 1177 (1987) (seizure occurs when the individual reasonably believes that he is not free to leave). Accordingly, appellant contends that once he was seized and requested a lawyer, the police were required to cease all questioning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Consequently, appellant argues that evidence obtained from the stop which followed further questioning after he had requested a lawyer must be suppressed. *Id.*

We reject appellant's argument. The United States Supreme Court recently held that a request for a lawyer stops further questioning by police only in instances where the sixth amendment right to counsel attaches and when it has been invoked. *McNeil v. Wisconsin,* —— U.S. ——, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). There, the Court stated:

We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation".... If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed prior to identification as a suspect. Most rights must be asserted when the government seeks to take action they protect against. The fact that we have allowed the *Miranda*

right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*Id.,* —— U.S. at ——; n. 3, 111 S.Ct. at 2211, n. 3.

Instantly, we previously concluded that appellant was not seized or under arrest at the time the officers initially approached him, and he requested counsel. We now further conclude that despite appellant's allegation that he did not feel free to leave when the officers approached and he requested counsel, this was not a reasonable belief under the totality of the circumstances. The fact that plainclothes officers approached him in the narrow confines of the pedestrian bridge is not determinative of whether he was free to leave since he chose to limit his freedom of motion by using the confines of public transportation, and the record does not indicate that the officers constrained him by brandishing guns, blocking his path, or otherwise asserting their authority to restrain him.

As was noted previously, the officers approached seeking only to ask questions and obtain his consent to search. This would be a minimum intrusion if appellant were not concealing contraband. Consequently, appellant's request for counsel when the officers approached him did not serve to terminate further questions by police or mandate suppression of the responses made by either appellant or Bradley; nor does it compel suppression of the resulting arrest and the evidence seized as a consequence of the arrest. *Id.*

▮ Appellant further contends that he did not give a voluntary, intelligent, and knowing waiver of his rights after he was given his *Miranda* warnings upon his arrest. This argument is based in part on the argument that giving *Miranda* warnings does not cancel the effect of statements already unlawfully obtained. We already have determined that his request for a lawyer did not achieve this result. We further note that after *Miranda* warnings properly are given, the Commonwealth may show a waiver of *Miranda*

rights by a preponderance of the evidence from the circumstances. *Commonwealth v. Logan,* 519 Pa. 607, 549 A.2d 531 (1988); *Commonwealth v. Cephas,* 361 Pa.Super. 160, 522 A.2d 63 (1987).

■■■ Officer Ciupinski testified that appellant expressly indicated to Detective Holland after he was given his *Miranda* warnings that he understood his rights, and then he made explanatory statements. N.T., 2/6/90 at 30. This testimony was not contradicted by appellant at the suppression hearing. Where a defendant manifests that he understands his rights and follows immediately with an incriminating answer to the officer's question, such is "tantamount to a physical manifestation of his present intent to waive his rights. Such a physical manifestation qualifies as an explicit waiver under the definition provided by the [*Commonwealth v. Bussey* 486 Pa. 221, 404 A.2d 1309 (1979)] court." *Commonwealth v. Speaks,* 351 Pa.Super. 149, 153, 505 A.2d 310, 313 (1986). An express waiver of each and every right is not necessary. *Commonwealth v. Bussey, supra.* Accordingly, we find the record supports the determination that appellant knowingly, intelligently, and voluntarily waived his rights.

■■ Next, appellant asserts that the evidence adduced at trial was insufficient to establish a conspiracy with Bradley. He contends that mere presence at the scene of the crime does not support a conviction of conspiracy. *Commonwealth v. Carter,* 329 Pa.Super. 490, 478 A.2d 1286 (1984). It is well-established that the test for reviewing sufficiency of the evidence is that all the evidence and reasonable inferences therefrom will be viewed in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986). Furthermore:

"A conspiracy need not be established by direct evidence. A corrupt agreement to commit a criminal act may be shown by circumstantial evidence. The existence of a common agreement may be inferred from the evidence of the circumstances surrounding the allegedly

conspiratorial activities, and from the relationship between and the conduct of the parties. Where the conduct of the parties indicates that they were acting together with a common and corrupt purpose ... the jury may properly infer that a conspiracy did exist."

*Commonwealth v. Brown*, 351 Pa.Super. 119, 122–23, 505 A.2d 295, 296 (1986) (citations omitted). Instantly, appellant and Bradley travelled together to New York on two occasions one week apart and stayed a short time. Appellant was found carrying cocaine with a street value of $15,000 in his sock while his companion possessed a concealed weapon. Appellant admitted that they both purchased cocaine in New York and intended to sell it for a profit. We conclude that the evidence more that supports the jury conviction for conspiracy.

Appellant also contends that the trial judge usurped the jury's factfinder role by suggesting the conclusion he favored in summarizing the evidence in his charge. This claim lacks merit. First, appellant failed to object to the charge at trial and thus failed to preserve this issue for our review. Pa.R.Crim.P. 1119(b); *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977). Second, even if the issue were preserved, it is clear that a trial judge is permitted to summarize the evidence and reasonable inferences therefrom, as he did here, as long as it remains clear to the jury that it must decide the facts. *Commonwealth v. Vernille*, 275 Pa.Super. 263, 418 A.2d 713 (1980). Instantly, the trial judge made it clear to the jury that it alone was the finder of fact.

Appellant's final argument is that his sentence of four to ten years incarceration for possession with intent to distribute cocaine and conspiracy manifestly is excessive. He maintains that a three year mandatory minimum for the amount of cocaine he possessed is standard, and a longer minimum was not justified by the reasons stated on the record at sentencing. We note that this is a challenge to the discretionary aspects of sentence. Accordingly, appellant is required to include within his brief a separate state-

ment of the reasons relied upon for appeal. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987). Our review of appellant's brief reveals that he complied with this requirement.

We turn our attention to the issue of whether appellant's statement raises a substantial question that the sentence is inappropriate under the Sentencing Code as a whole. This finding must be made before we may entertain the merits of an appeal from the discretionary aspects of sentence. *See* 42 Pa.C.S. § 9781(b). In *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385 (1989) (en banc), we considered the types of allegations which raise a substantial question under 42 Pa.C.S. § 9781(b). Quoting *Commonwealth v. Losch,* 369 Pa.Super. 192, 535 A.2d 115 (1987), we stated:

> What constitutes a "substantial question" under section 9781(b) must be evaluated on a case by case basis. However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the judges' actions were: 1) inconsistent with a specific provision of the Sentencing Code; or 2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Williams, supra,* 386 Pa.Super. at 324–25, 562 A.2d at 1387. With these principles in mind, we examine the argument underlying appellant's excessiveness claim and determine whether it supports an appeal.

Appellant argues that the trial court failed to consider his background, character, and prior record at sentencing. He further contends that when sentencing in the aggravated range, the trial court must set forth its reasons on the record at sentencing. *Commonwealth v. Lupatsky,* 341 Pa.Super. 338, 491 A.2d 845 (1985). Appellant further notes that the trial court did not order or consider a presentence report, *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988), and the court's only on-the-record statement was that intent to distribute is a very serious offense.

42 Pa.C.S. § 9725 mandates that the sentencing court consider not only the nature and circumstances of the

crime, but also the history, character, and condition of the defendant. Thus, appellant's argument that the court focused solely on the crime advances a colorable claim that the sentencing court acted in a manner contrary to the Sentencing Code. Therefore, it is clear that it raises a substantial question that the sentence imposed is inappropriate under the Sentencing Code as whole and supports an appeal from the discretionary aspects.

We now address the merits. Great weight is given to the sentencing judge's discretion, and a sentence will not be disturbed absent an abuse of that discretion. *Commonwealth v. Minott*, 395 Pa.Super. 552, 577 A.2d 928 (1990). Furthermore, an appellate court will not find an abuse of discretion unless the sentence is so manifestly excessive as to inflict too severe a punishment. *Commonwealth v. Hainsey*, 379 Pa.Super. 376, 550 A.2d 207 (1988). Instantly, the sentencing transcript reveals that trial court was apprised of appellant's youth, that he is a high school graduate, he lived with his mother, and had a job. The court also acknowledged that although appellant never had been incarcerated, he possessed a juvenile record.

While it is clear that the trial court did not elaborate as to the specific weight given to the various factors, this fact is not fatal so long as the court properly considered the sentencing factors. *Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158 (1985). The sentencing judge was made aware of appellant's background and record at sentencing and considered them in conjunction with the crimes. We will presume that the trial judge considered the evidence of mitigating circumstances presented to him at the sentencing hearing. *Commonwealth v. McDonald*, 399 Pa.Super. 250, 259, 582 A.2d 328, 331 (1990) (it is presumed that a court considers all evidence presented to it at a hearing); *see also Commonwealth v. Devers, supra,* where the Court stated "It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand." *Id.,* 519 Pa. at 102, 546 A.2d at 18. We further note that Pa.R.Crim.P. 1403 provides that the court *may* order a

presentence report but it is not required that it do so; it mandates only that the court consider the appropriate sentencing factors.

The sentencing court considered appellant's background and mitigating factors, and weighed them together with the serious crimes that he committed. These crimes included possession with intent to deliver, conspiracy, and, as a result of the conspiracy, possession of a concealed weapon. Even though sentences for most of these crimes were made concurrent, we do not find that a four year minimum incarceration in consideration of these circumstances is so manifestly excessive as to shock our conscience with its severity.

Judgment of sentence affirmed.