J-S42004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DANIEL GALLAGHER, | |
| Appellant | No. 789 EDA 2014 |

Appeal from the Judgment of Sentence January 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014470-2012

BEFORE: SHOGAN, MUNDY, and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 27, 2015**

Appellant, Daniel Gallagher, appeals from the judgment of sentence entered on January 30, 2014, after he pled guilty to one count each of ethnic intimidation, terroristic threats, criminal use of a communication facility, and harassment. We affirm.

The trial court set forth the factual background of this case as follows:

> The complainant, [Attorney] Joel "Jules" Epstein, received several calls to his law office on October 1, 2012, which is located in Philadelphia. (N.T. 12-05-13 p. 9). These calls were left on his direct line, along with the lines of Mr. Epstein's co-workers. (N.T. 12-05-13 p. 9). The caller identified himself as Appellant, and left a phone number. (N.T. 12-05-13 p. 10). Mr. Epstein had represented Appellant in a previous case from 1984, and received various calls throughout the years from Appellant for various reasons. (N.T. 12-05-13 pp. 19-20). Mr. Epstein

---

[*] Former Justice specially assigned to the Superior Court.

recognized the voice on the messages as Appellant due to their relationship, along with Appellant identifying himself and leaving his phone number. (N.T. 12-05-13 p. 10). The 25 minutes of messages contained violent threats against Mr. Epstein, his family, and his coworkers, including "I'm going to kill Jules Epstein," "tell him I'm going to kick his wife's teeth down her throat," and, to his African-American secretary "you n[-----] loving whore, you better tell that Jew I'm going to kill him. Are you a n[-----]? You sound like it," among other, more lurid statements. (N.T. 12-05-13 p. 10-12).

[Appellant] also said that he recently purchased an AK-47 and .357 Magnum, which are a semi-automatic rifle and a high-power handgun, respectively. (N.T. 12-05-13 p. 11). He said that he would shoot up an elementary school. (N.T. 12-05-13 p. 11). Mr. Epstein and his staff contacted the police department due to all of these very dangerous threats, specifically the threats against the schools. (N.T. 12-05-13 pp. 11, 18; Sentencing Hearing, 1-30-14 p. 27). Because of these threats, two schools, Warren Snyder Middle School and Bristol Borough High, were locked down. (N.T. 12-05-13 p. 12).

Mr. Epstein testified during the guilty plea, explaining his relationship with the Appellant, along with Appellant's history of mental illness and alcoholism. [In the 1984 case,] Appellant had set fire to an alcoholism counseling center for police officers and firefighters, and was represented by Mr. Epstein. (N.T. 12-05-13 p. 20). Appellant received a county sentence with a long probationary period, and received mental health treatment while on probation, showing great improvement over the next decade. (N.T. 12-05-13 p. 18). Appellant sporadically called Mr. Epstein over the next 18 years, even though his sentence was over. (N.T. 12-05-13 p. 10). Mr. Epstein could tell when Appellant was off of his medication and/or was drinking and doing drugs, and said that it was apparent this was the case when those calls were made. (N.T. 12-05-13 p. 19). This was compounded by other factors, such as the death of family members . . . . (N.T. 12-05-13 p. 20; Sentencing Hearing 1-30-14 p. 20). During the sentencing hearing, a psychological report created by Dr. Steven E. Samuel was entered by the defense, detailing Appellant's condition. (N.T., Sentencing Hearing 1-30-14 p. 18).

Trial Court Opinion, 11/12/14, at 2-4.

Following the trial court's acceptance of Appellant's open guilty plea, Appellant was sentenced to a term of three and one-half to seven years of incarceration for ethnic intimidation, two and one-half to five years of incarceration for terroristic threats, seven years of probation for criminal use of a communication facility, and one year of probation for harassment. N.T., Sentencing, 1/30/14, at 28. All sentences were ordered to be served consecutively. This resulted in an aggregate term of six to twelve years of incarceration followed by eight years of probation.[1] On February 8, 2014, Appellant filed a timely post-sentence motion that was denied on February 24, 2014. Appellant filed a timely appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises two issues for this Court's consideration:

---

[1] In his brief, Appellant claims that he received an aggregate sentence of five to ten years of incarceration, followed by eight years of probation. Appellant's Brief at 6. This is incorrect. While the trial court stated at the conclusion of the hearing that the sentences resulted in an aggregated term of five to ten years of incarceration followed by eight years of probation, N.T., Sentencing, 1/30/14, at 28, the trial judge made a computational error. Both the transcript from the sentencing hearing and the written order of sentence reflect the imposition of an aggregate term of six to twelve years of incarceration followed by eight years of probation. N.T., Sentencing, 1/30/14, at 28; Order, 1/30/14. Generally, when there is a discrepancy between the sentence as written and orally pronounced, the written sentence controls. *Commonwealth v. Willis*, 68 A.3d 997, 1010 (Pa. Super. 2013). Here, there is no discrepancy – both the oral and written sentencing orders imposed an aggregate term of six to twelve years of incarceration followed by eight years of probation.

> A. Did the lower court abuse its discretion by classifying the offense gravity score [("OGS")] of ethnic intimidation as a five when it in fact was a four?
>
> B. Did the lower court abuse its discretion by imposing an aggravated sentence on appellant based on speculation, without properly placing aggravating factors on the record, and without regard for facts of record?

Appellant's Brief at 4 (full capitalization omitted).

Both of Appellant's issues challenge the discretionary aspects of his sentence.[2] We note that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Martin*, 727 A.2d 1136, 1143 (Pa. Super. 1999). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

---

[2] When a plea agreement is open and contains no bargain for a specific sentence, the defendant is not to be precluded from appealing the discretionary aspects of his sentence. *Commonwealth v. Brown*, 982 A.2d 1017, 1019 (Pa. Super. 2009) (citing *Commonwealth v. Dalberto*, 648 A.2d 16, 21 (Pa. Super. 1994)). In the case at bar, Appellant entered an open guilty plea, and therefore, he is permitted to challenge the discretionary aspects of his sentence.

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [708]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id*. at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)). The determination of whether there is a substantial question is made on a case-by-case basis, and this Court will grant the appeal only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Sierra*, 752 A.2d 910, 912-913 (Pa. Super. 2000).

Herein, the first three requirements of the four-part test are met, those being that Appellant brought a timely appeal, raised the challenges in a post-sentence motion,[3] and included in his appellate brief the necessary

_____

[3] The Commonwealth avers that Appellant failed to preserve his first issue concerning the application of the OGS for the crime of ethnic intimidation. Commonwealth's Brief at 9-10. The Commonwealth claims that although Appellant mentions the OGS in his post-sentence motion and Pa.R.A.P. 1925(b) statement, he never specifically objected to it. *Id*. While the relevant portions of Appellant's post-sentence motion and Pa.R.A.P. 1925(b) statement are inartfully drafted, we conclude that both documents fairly suggest Appellant's challenge to the OGS. Post-sentence Motion, 2/8/14, at
*(Footnote Continued Next Page)*

- 5 -

separate concise statement of the reasons relied upon for allowance of appeal pursuant to Pa.R.A.P. 2119(f). Therefore, we next determine whether Appellant raises a substantial question requiring us to review the discretionary aspects of the sentence imposed by the trial court.

Appellant argues in his Pa.R.A.P. 2119(f) statement that the trial court erred in its calculation of Appellant's OGS. Appellant's Brief at 9. We have held that such a challenge presents a substantial question for our review. *See Commonwealth v. Archer*, 722 A.2d 203, 210-211 (Pa. Super. 1998) (*en banc*) (holding that claim that sentencing court used incorrect OGS raises a substantial question). Appellant also argues that the trial court erred in failing to place on the record its reasons for sentencing Appellant outside the guideline range for the crimes of ethnic intimidation and terroristic threats. Appellant's Brief at 9-10. This claim also presents a substantial question. *See Commonwealth v. Antidormi*, 84 A.3d 736, 759 (Pa. Super. 2014) (stating that claims that the sentencing court imposed a sentence outside the standard guidelines without providing adequate reasons on the record presents a substantial question). Because both of Appellant's issues present a substantial question, we proceed with our analysis.

*(Footnote Continued)* ─────────────

1 n.2; Pa.R.A.P. 1925(b) Statement, 5/13/14, at 3 n.4. Accordingly, we do not find the challenge waived.

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006). In this context, an abuse of discretion is not shown merely by an error in judgment. *Id*. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. *Id*.

With respect to Appellant's challenge to the OGS, we note that Appellant is correct insofar as the proper OGS for ethnic intimidation in this case is four. 204 Pa. Code § 303.3(d). Additionally, because Appellant's prior record score was also four, the sentencing guidelines provide a standard-range minimum sentence of between six and sixteen months, plus or minus three months for mitigating or aggravating circumstances. 204 Pa. Code § 303.16. Here, the trial court placed Appellant's OGS at five and, at that level, the sentencing guidelines provide a standard-range minimum sentence of between nine and sixteen months, plus or minus three months for mitigating or aggravating circumstances. *Id*. However, because the trial court chose to sentence Appellant beyond the aggravated range recommended by the sentencing guidelines, we conclude that any error in whether the standard-range minimum sentence was six to sixteen months as opposed to nine to sixteen months was of no moment. The trial court

informed Appellant of the possible maximum sentence he could receive, and then sentenced Appellant to a term of three and one-half to seven years,[4] a legal sentence that was outside of the guidelines. N.T., Guilty Plea, 12/5/13, at 5; N.T., Sentencing, 1/30/14, at 4, 28. The trial court's application of an OGS of five as opposed to four amounts to a difference of three months between the lowest minimum guideline-range sentence. However, because the trial court sentenced Appellant to a minimum that was almost twice the aggravated range of the guidelines, we conclude that the erroneous calculation of the OGS was harmless as there is no indication that the court was guided in its sentencing by the incorrect OGS. *See Commonwealth v. Rodda*, 723 A.2d 212, 214 (Pa. Super. 1999) (providing that generally, this Court will disturb a sentence based on an incorrect or absent guideline recitation only upon a showing that the trial court was guided in its sentencing decision by a material misapprehension of the applicable sentencing guideline range). Accordingly, no relief is due.

In Appellant's second issue, he alleges that the trial court failed to provide its reasons for sentencing him outside of the prescribed guideline range. We note that:

> When the sentencing court imposes a sentence outside the guidelines, it must provide a contemporaneous written

---

[4] Ethnic intimidation was graded as a felony of the third degree. A felony of the third degree carries a maximum sentence of seven years. 18 Pa.C.S. § 1103(3).

statement of the reason or reasons for the deviation from the guidelines. The Sentencing Code requires a trial judge who intends to sentence outside the guidelines to demonstrate, on the record, his awareness of the guideline ranges. Having done so, the sentencing court may, in an appropriate case, deviate from the guidelines by fashioning a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community. In doing so, the sentencing judge must state of record the factual basis and specific reasons which compelled him or her to deviate from the guideline ranges. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only.

[W]hen deviating from the sentencing guidelines, a trial judge must indicate that he understands the suggested ranges. However, there is no requirement that a sentencing court must evoke "magic words" in a verbatim recitation of the guideline[] ranges to satisfy this requirement. Our law is clear that, when imposing a sentence, the trial court has rendered a proper "contemporaneous statement" under the mandate of the Sentencing Code "so long as the record demonstrates with clarity that the court considered the sentencing guidelines in a rational and systematic way and made a dispassionate decision to depart from them."

Our Supreme Court has ruled that where pre-sentence reports exist, the presumption will stand that the sentencing judge was both aware of and appropriately weighed all relevant information contained therein. . . . As our Supreme Court has explained, "it would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand."

When the record demonstrates that the sentencing court was aware of the guideline ranges and contains no indication that incorrect guideline ranges were applied or that the court misapplied the applicable ranges, we will not reverse merely because the specific ranges were not recited at the sentencing hearing.

***Commonwealth v. Griffin***, 804 A.2d 1, 7-8 (Pa. Super. 2002) (citations omitted).  Additionally:

> [w]hen reviewing a sentence outside of the guideline range, the essential question is whether the sentence imposed was reasonable. ***Commonwealth v. Walls***, 592 Pa. 557, 926 A.2d 957, 962 (2007). An appellate court must vacate and remand a case where it finds that "the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable." 42 Pa.C.S.A. § 9781(c)(3). In making a reasonableness determination, a court should consider four factors:
>
>> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>>
>> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>>
>> (3) The findings upon which the sentence was based.
>>
>> (4) The guidelines promulgated by the commission.
>
> 42 Pa.C.S.A. § 9781(d). A sentence may be found unreasonable if it fails to properly account for these four statutory factors. A sentence may also be found unreasonable if the "sentence was imposed without express or implicit consideration by the sentencing court of the general standards applicable to sentencing." ***Walls***, 926 A.2d at 964. These general standards mandate that a sentencing court impose a sentence "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b).

***Commonwealth v. Sheller***, 961 A.2d 187, 190-191 (Pa. Super. 2008).

After review, we conclude that the trial court properly considered the aforementioned factors, imposed a reasonable sentence, and placed its reasons for deviating from the sentencing guidelines on the record.  N.T.,

1/30/14, at 25-28. The trial court explained its review of Appellant's presentence investigation report, psychological reports, criminal history, mental health history, mitigating factors, and aggravating factors. *Id*. at 18, 25-28. The trial court stated that it:

> considered and acknowledged the mitigating factors, such as Appellant's mental health issues, drug addictions, and guilty plea. (N.T., Sentencing Hearing 1-30-14 pp. 25, 27). However, the Court also looked at Appellant's inability or unwillingness to seek help outside a judicial setting when his mental illness or drug and alcohol problems began to spiral out of control and the subsequent history of violence associated with that event. (N.T., Sentencing Hearing 1-30-14 p. 26). In addition, the Court also considered [Appellant's] prior history of threats to do damage to the police and his subsequent arson of the "369" Center, a place where police could seek help for their psychological issues. The Court noted that [in the instant case] the police intervened before Appellant could carry out his threats to kill innocent children at an elementary school mere blocks from his house, unlike what happened when he made threats against police, then subsequently committed an arson on a place where police likely would be. (N.T., Sentencing Hearing 1-30-14 p. 26).
>
> Furthermore, the terroristic threats aimed at schools were not only made all the more real by the Newtown[5] shooting some two months after the instant case, but also had widespread psychological harm to everyone in the schools that were locked down, including students, teachers, family members and the community at large. (N.T., Sentencing Hearing 1-30-14 p. 27).

---

[5] Insofar as Appellant claims that the trial court, at the time of sentencing, erred in comparing Appellant's actions to the shooting deaths of twenty children in Newtown, Connecticut only two months after Appellant made his threats, Appellant's Brief at 15-16, Appellant did not object to the trial court's reference to the Connecticut school shooting. Accordingly, any challenge to the trial court's statement was not preserved for appellate review. *See* Pa.R.A.P. 302(a) (stating that issues not raised in the lower court are waived and cannot be raised for the first time on appeal).

> All of these aggravating factors far outweigh any mitigating factors, and [these reasons] justify a sentence above the guidelines.

Trial Court Opinion, 11/12/14, at 12-13. We discern no error or abuse of discretion, and we conclude that the record reflects the trial court's proper consideration of the appropriate statutory considerations. We conclude that the trial court's statement on the record reflected an apt rationale for deviating from the sentencing guidelines. Appellant's contrary claim lacks merit.

For the reasons set forth above, we conclude that Appellant is entitled to no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2015