582 A.2d 383

**COMMONWEALTH of Pennsylvania**

v.

**Tommie LIDGE, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 9, 1990.

Filed Nov. 16, 1990.

Petition for Allowance of Appeal Denied April 1, 1991.

Mitchell A. Kaufman, Asst. Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for the Com., appellee.

Before ROWLEY, BECK and BROSKY, JJ.

BROSKY, Judge.

Tommie Lidge appeals from the judgment of sentence of the trial court following her bench trial convictions of possession of a controlled substance and possession with intent to deliver a controlled substance. On October 12, 1989, appellant filed a motion to suppress evidence. The motion was denied after a suppression hearing before the Honorable Robert E. Dauer of the Court of Common Pleas of Allegheny County. Judge Dauer then recused himself. The case was reassigned to the Honorable Walter R. Little and appellant's convictions followed.

Appellant claims on appeal that the trial court erred in failing to suppress cocaine seized from appellant. She argues that: (1) the police "illegally stopped" her in the Greater Pittsburgh International Airport; and, (2) she did not voluntarily consent to a search of her carry-on bag (the bag was found to contain one thousand seven and one-half grams of cocaine). Appellant avers that the discovery of the cocaine was the result of the illegal stop and search. We affirm the trial court:

> In reviewing an order denying a motion to suppress evidence, this court must determine whether the factual

findings of the suppression court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Schneider*, 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989) (Citations omitted).

The facts adduced at the suppression hearing are as follows. At approximately 11:05 a.m. on July 27, 1989, Allegheny County Police Officers Dean Kaminski and Jeffrey Korczyk were on duty at the Greater Pittsburgh International Airport. The officers were investigators assigned to a unit that attempted to interdict illegal drugs that passed through the airport. Their duties included monitoring "air traffic and passengers arriving from narcotics source cities [Cities and accompanying airports in close proximity thereto from which bulk quantities of drugs are subdivided and distributed to other parts of the country. New York City is considered a source city; Newark International Airport is considered a source city airport because of its proximity to New York City]. . . ." N.T., 1/11/90, at 3. The officers had been assigned to the investigation of drug offenses for three and one-half years and had received specialized training in airport drug detection. *Id.* at 4. They ordinarily utilized a "drug courier profile" (characteristics that differentiate certain passengers from the majority of others and that may or may not be indicative of drug trafficking; examples of characteristics focused upon were manner of dress, limited luggage, tickets paid for in cash, etc.) in their attempt to ferret out drug couriers.

On this particular morning the officers were monitoring flights arriving from Newark. They noticed a woman disembarking from the airplane; she was the only female passenger on the flight. The majority of the other passen-

gers seemed to be business travelers who were dressed in business suits. *Id.* at 20. Appellant was dressed in a worn and soiled tank-top and casual slacks. Her hair was styled in long braids. The carry-on bag that she possessed appeared new in contrast to her worn clothing. *Id.* at 8. Her appearance was "disheveled." *Id.* She made a "concerted" stop at the bottom of the ramp and scanned the gate area. *Id.* at 9.

The officers noticed that appellant had no identification attached to her carry-on bag; that fact struck them as unusual since most passengers attach identification in case the bag is misplaced. *Id.* at 9–10. The officers followed her as she walked through the airport. Officer Kaminski stated, "[S]he almost broke into a jog going to ... the gate that commuter flights leave from." *Id.* at 10. As the officers observed her check in for a commuter flight they noticed that, "there were no baggage tags on her ticket jacket." *Id.* The import of this was that she possessed no luggage other than her carry-on bag. Appellant went into a women's room for ten minutes. She then made a one and one-half minute telephone call; she never identified herself to the person called, never addressed the person called by name, gave "yes" and "no" answers to the person called and stated that, "I will be there at one-thirty." *Id.* at 11. She then took a seat in the center of an empty passenger area.

"At this point, considering all that [the officers] had observed ..., [they] decided to approach her for the purpose of conversation...." *Id.* at 12. Officer Kaminski stated at the suppression hearing that he, "had some reasonable suspicion [but] there [was] no indication [that appellant was] committing a crime." *Id.* at 26. The officers sat to one side of appellant (they did not surround her). They identified themselves as police officers and, "asked her if she would mind speaking to us, and her response was, no, she didn't mind speaking to us [since] she would have to wait [there] for a while anyhow." *Id.* at 12–13. When asked where she had traveled from she stated that she had

come from Newark and was en route to Canton–Akron, Ohio. She stated that she had visited relatives in Newark and was returning home. The officers asked if, "she would mind showing [them] her [airline] ticket." *Id.* at 13. She replied in the affirmative and complied with the request; the information on the ticket revealed that it was a one-way ticket, paid for in cash that morning and was issued to a T. Richmond (it was later revealed that appellant's name is Tommie Lidge). The officers asked if appellant had any identification; she replied that she had none. At this point she asked if she had done anything wrong. The officers responded in the negative and explained to her their purpose in and duties while patrolling the airport. They told her that some of her characteristics matched the "drug courier profile" and that this had, "made [them] curious about her travel." *Id.* at 14. They asked her, "in light of these observations would she mind if [they] made a search of her bag." *Id.* She was told that she could deny permission to search and that if she did the inquiry would end. Her hands began to tremble and her respiration quickened. She indicated that they could search the bag but did not want it done in the center of the lounge.

Officer Kaminski suggested that a corner of the lounge area would offer more privacy; appellant carried the bag over to that corner of the lounge, opened it and began handing the officers the contents. As she handed over a pair of red sweat pants, the last item, her trembling increased. The sweat pants were folded over a solid object, "a parcel eight inches by eight inches by two inches thick completely wrapped in masking tape, a form of packaging that" the officers had observed to contain drugs in prior investigations. *Id.* at 17. Appellant was given her *Miranda* rights. She was taken to another gate at the terminal. The contents of the package field-tested positive for cocaine and appellant was again given her *Miranda* rights; she exercised her rights and would make no comment regarding the drugs. A further search of the bag revealed a one-way ticket from Canton–Akron to Newark two days

prior, paid for in cash, in the name of T. Ledge (appellant's name misspelled); there was also $651.00 in cash.

Appellant did not testify at the suppression hearing; the only two witnesses were the two police officers.

■ We first address whether the police "illegally stopped" appellant when they sat down beside of her and asked her questions. Appellant avers that the encounter amounted to a seizure or an investigatory detention; she further avers that the police did not possess reasonable suspicion to believe that she may have been involved in criminal activity and therefore the investigatory detention was improper.

■ The United States Supreme Court has stated that any assessment of whether police conduct amounts to a seizure implicating the Fourth Amendment must take into consideration all of the circumstances surrounding the incident in each individual case. *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). Not all intercourse between policemen and citizens involves seizures of persons. *Id.* Only when the officer, by physical force or a show of authority, has in some way restrained the liberty of an individual may we conclude that a seizure has occurred. *Id.* A seizure occurs when, in view of all of the circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave. *Id.*

There was clearly no seizure involved in the instant case. Appellant was seated in the center of the passenger area of a gate at an airport. The officers sat to one side of appellant, identified themselves and politely asked her if she would mind speaking to them. The record does not indicate that appellant was restrained by physical force or a show of authority. She voluntarily answered their questions. Hence, no seizure occurred during the encounter between appellant and the police.

■ We now address whether appellant was subjected to an investigatory detention.

A police encounter with a suspect may properly be characterized as a mere encounter, an investigative detention, a custodial detention, or a formal arrest.... A 'mere encounter' (or request for information) need not be supported by any level of suspicion, but it carries no official compulsion to stop or to respond.... An 'investigative detention' must be supported by reasonable suspicion; it subjects the suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest.... A 'custodial detention' must be supported by probable cause; it is deemed to arise when the conditions and/or duration of an investigating detention become so coercive as to be the functional equivalent of arrest.... Formal arrest requires probable cause, and needs no further definition.

*Commonwealth v. Douglass*, 372 Pa.Super. 227, 238–39, 539 A.2d 412, 417–18 (1988) (Citations omitted).

[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual ... in [a] public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen.... If there is no detention-no seizure within the meaning of the Fourth Amendment—then no constitutional rights have been infringed.... [Pursuant to *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968),] certain seizures are justifiable under the Fourth Amendment if there is articulable suspicion that a person has committed or is about to commit a crime.... [R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop.... Temporary detention for questioning on less than probable cause [is justified] where the public interest involved is the suppression of illegal transactions in drugs or of any other serious crime....

*Florida v. Royer*, 460 U.S. 491, 497, 498–99, 103 S.Ct. 1319, 1323, 1324–25, 75 L.Ed.2d 229 (1983). If an airline traveler proceeds under an assumed name, pays cash for a one way

ticket, fails to place proper identification upon luggage, appears nervous and is casually dressed, the police trained in drug procedures have adequate grounds to suspect that the person may be carrying drugs. *Florida v. Royer, supra.* In such a case, the police may conduct an investigative detention in order to verify or dispel their suspicions. *Id.*

First, we find that the interaction between appellant and the police did not rise to the level of an investigative detention; appellant was not detained in any manner. She engaged in a consensual conversation in a public place with the police officers and, as will be explained, *infra,* voluntarily consented to a search of her carry-on bag. Under these circumstances, the police did not need to possess an articulable suspicion that appellant was committing a crime. Therefore, none of appellant's Fourth Amendment rights were violated by the encounter.

■ *Arguendo,* even if appellant's interaction with the police amounted to an investigative detention, we would still find that none of appellant's Fourth Amendment rights had been violated. Appellant's manner of dress and appearance, the fact that she arrived from Newark (a source city), the absence of any identification upon appellant's carry-on bag, the absence of any other luggage, the one-way airline ticket paid for in cash, appellant's lack of identification (the police did not determine until later that appellant was traveling under an assumed name) and her nervousness all combined to provide the police with an articulable suspicion that appellant was carrying drugs. Therefore, an investigative detention would have been permissible.

■ Appellant's final claim is that she did not voluntarily consent to a search of her carry-on bag.

"[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given...." *Id.* If a person is involved in a permissible police encounter in a public place or a justifiable *Terry*-type deten-

tion, the person's consent, if voluntary, to search his or her luggage would allow the products of the search to be admissible against that person. *Id.*

We find that the Commonwealth has proven that appellant voluntarily consented to a search of her carry-on bag. We have already determined, *supra,* that the initial encounter between appellant and the police was proper. At the point immediately prior to the officers' request to search the bag appellant was aware of the officers' identity, function at the airport, belief that appellant possessed some of the characteristics of a drug courier and suspicion that appellant may have been committing a crime. The officers asked her if, in light of the aforementioned facts, she would mind if they searched her bag. She was told that she possessed the right to deny permission to search and that if she exercised that right the encounter would terminate. Appellant then consented to the search. The uncontroverted facts adduced at the suppression hearing clearly show that appellant did not feel that she was not free to walk away, that she was subjected to any type of coercion or duress or that she was misled regarding the purpose of or circumstances surrounding the encounter with the officers. Hence, appellant clearly voluntarily consented to the search and, therefore, the trial court properly refused to suppress the cocaine discovered in her carry-on bag.

Judgment of sentence affirmed.

BECK, J., concurs in the result.