## Commonwealth v. Kennedy

*James C. Dalton, assistant district attorney,* for the Commonwealth.

*Theresa Marie Mogavero,* for defendant.

SOKOLOVE, *J.,* August 25, 1992—Defendant Michael Joseph Kennedy has filed a motion in arrest of judgment and a motion for a new trial to his conviction after a bench trial before the undersigned to the crimes of possession of a controlled substance and possession of drug paraphernalia. After review of the memoranda of law on both sides and oral argument, we find that defendant's post-trial motions are justified.

The cornerstone of defendant's motions is that we failed to suppress evidence which was procured in violation of his Fourth Amendment rights. We initially held a hearing on defendant's suppression motion which, at that time, we denied. The parties stipulated that the evidence presented during the suppression hearing was also the evidence for trial. On that basis, we entered a guilty verdict against the defendant, reserving a closer examination of the suppression issues for post-trial consideration. Upon reflection, we deem that the suppression mo-

tion should have been granted, excluding all of the Commonwealth's evidence. Accordingly, the charges against the defendant will be dismissed. We will, first, briefly discuss the reasons for our decision.

In the evening of Sunday, January 10, 1988, Officer Charles A. Patton, a veteran of almost 12 years with the Newtown Township Police Department, was in full uniform and on patrol in his marked car. At 6:45 p.m. he was directed to the industrial park in Newtown Township because of complaints of loud noises, which sounded like gunshots, in the vicinity. He failed to locate the source of the noise, but, because he was in the area after dark, he decided to check some of the corporate parking lots as a safeguard against vandals and thieves.

At a parking lot located at Friends Lane and Penn Street, between Aydin Vector Corporation and a medical supply business, Officer Patton spotted two automobiles. The adjacent businesses were closed at the time, and the parking lot was not lighted. One of the cars was unoccupied. In the other car, a Chevrolet Nova, was an individual lying down across the front seat and leaning against the passenger-side door. Officer Patton could see only the person's head, and it looked like he was "lying down or possibly hiding." (N.T. p. 5.) The car was not running and was dark. The lights of the patrol car offered the sole illumination.

The car was not running and was dark. The lights of the patrol car offered the sole illumination.

Officer Patton did not believe that the person in car had any involvement with the gunshot sounds. Nonetheless, he "decided to check to see what the person was doing in the automobile." (N.T. p. 5.) The officer

approached the car to interrogate its occupant, and the occupant, the defendant, rolled down the window. At this point, according to Officer Patton, the defendant was not free to leave.

The officer asked the defendant what he was doing, and the defendant said that he was waiting to pick up a younger brother returning by bus from a ski trip. The officer asked for identification, which the defendant produced. While speaking with the defendant, Officer Patton detected the smell of freshly burnt marijuana. When he told the defendant he smelled marijuana, the defendant admitted smoking a joint. The officer saw smoked marijuana cigarettes in the ashtray of the car. Then he asked the defendant to get out of the car to be searched for controlled substances. In the defendant's clothes' pockets the officer found two bags containing a total of 5.43 grams of marijuana. Officer Patton next searched the defendant's car for illegal drugs and discovered smoked marijuana cigarettes in the open ashtray, a box with two marijuana cigarettes and a straw with cocaine residue and, from the glove compartment, two scales, one of which contained cocaine residue. Officer Patton placed the defendant under arrest and read *Miranda* rights to him at the scene and later at the police station. The charges, to which the defendant was convicted, resulted from this chain of events.

The question to be resolved is whether the defendant's Fourth Amendment right to personal security was violated by Officer Patton's action.

Not all intercourse between policemen and citizens involves seizures of persons so as to invoke Fourth Amendment protections. *Michigan v. Chesternut,* 486 U.S. 567

(1988); *Commonwealth v. Lidge,* 399 Pa. Super. 360, 582 A.2d 383 (1990). Encounters between the public and the police may be categorized as mere encounters, noncustodial detentions, custodial detentions and formal arrests. *Commonwealth v. Lidge, supra; Commonwealth v. Douglass,* 373 Pa. Super. 227, 539 A.2d 412 (1988).

The term "mere encounter" refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the Fourth Amendment. *Commonwealth v. Brown,* 388 Pa. Super. 187, 565 A.2d 177 (1989). A "mere encounter," which has been described as a simple request for information, need not be supported by any level of suspicion, but it carries no official compulsion to stop or to respond. *Commonwealth v. Douglass, supra.*

As the Superior Court has explained:

"We adhere to the view that a person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained. Only when such a restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officers with the privacy and security of individuals....' As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *In Interest of Jermaine,* 399 Pa. Super. 503, 509, 582 A.2d 1058, 1061 (1990).

A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident which may in any way evidence a show of authority or exercise of force by the police officer, a reasonable person would have believed that he was not free to go. *United States v. Mendenhall,* 466 U.S. 544 (1980); *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977); *Commonwealth v. Daniels,* 410 Pa. Super. 275, 599 A.2d 988 (1991).

Because Officer Patton himself testified that the defendant was not free to leave when the officer went to the car and confronted the defendant, we must find that the incident here constituted more than a mere encounter and did indeed amount to a seizure under the Fourth Amendment of the U.S. Constitution.

A noncustodial or investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. *Commonwealth v. Lidge, supra; Commonwealth v. Brown, supra.* It subjects the suspect to a stop and a period of detention but does not involve such coercive conditions as to constitute the functional equivalent of an arrest as would a custodial detention. *Id.* Since defendant does not allege, nor could he, that either a custodial detention or a formal arrest occurred at the pertinent time here, we will analyze the facts as presented by the recognized standards for investigative detentions or stops.

The U.S. Supreme Court held in the seminal case of *Terry v. Ohio,* 392 U.S. 1 (1968), that a police officer may make an investigatory stop where he observes unusual activity which leads him reasonably to conclude in light

of his experience that criminal activity may be afoot. Such an investigatory stop must be based on objective facts creating a reasonable suspicion that the suspect is currently involved in criminal activity. *Commonwealth v. Fassett,* 496 Pa. 529, 437 A.2d 1166 (1981); *Commonwealth v. Valenzuela,* 408 Pa. Super. 399, 597 A.2d 93 (1991). The officer must be able to point to specific and articulable facts which, taken together with rational inferences drawn from those facts, reasonably warrant the intrusion. *Id.* Mere presence near a high crime area or in the vicinity of a recently reported crime is not enough to warrant a *Terry* stop. *Commonwealth v. Kearney,* 411 Pa. Super. 274, 601 A.2d 346 (1992). An officer must observe irregular behavior before he initiates a stop and, concurrently with his observation, he must hold a belief that the suspect is engaged in criminal activity. *Id.; Commonwealth v. Jones, supra.*

Utilizing these criteria, we are compelled to hold that Officer Patton's stop of the defendant here was illegal. Officer Patton was unable to state the necessary specific and articulable facts to justify defendant's detention. The officer had not formulated a belief that the defendant was engaged in criminal conduct. He did not link the defendant with the noise for which he was summoned to the area. Rather, he simply wished to see what the defendant was doing. Perhaps the officer's suspicion and curiosity were aroused by the defendant's reclining position in a car in a dark, vacant commercial parking lot. This is not sufficient to support a *Terry* stop. See *Commonwealth v. Jones, supra.* The facts of this case are akin to those in *Jones, Commonwealth v. Fassett, supra* and *Commonwealth v. Gruber,* 478 Pa. 63, 385 A.2d 1313 (1978), in all of which the Supreme Court held that the investigatory stops were improper.

Because the stop of the defendant was baseless, the searches flowing from the stop also violated the defendant's Fourth Amendment rights, and the evidence gathered as a result must be suppressed. *Wong Sun v. United States,* 37 U.S. 471 (1963). We would further note that the searches were solely for illicit drugs, not for weapons, and therefore exceeded the scope allowable for an independent *Terry* search for the officer's protection. See *Commonwealth v. Marconi,* 408 Pa. Super. 601, 597 A.2d 616 (1991).

We enter the following

### ORDER

And·now, August 25, 1992, upon consideration of defendant's post-trial motion, it is hereby ordered and decreed that the motion in arrest of judgment is granted. The charges against the defendant are dismissed.