J-A22018-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                     :           PENNSYLVANIA
                                                     :
                          v.                         :
                                                     :
                                                     :
RYAN MICHAEL BROWN                   :
                                                     :
                  Appellant             :  No. 369 WDA 2023

Appeal from the Judgment of Sentence Entered March 15, 2023
In the Court of Common Pleas of Clarion County Criminal Division at
No(s):  CP-16-CR-0000234-2022

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 5, 2024**

Appellant, Ryan Michael Brown, appeals from the judgment of sentence

entered March 15, 2023, as made final by the denial of his post-sentence

motion on March 23, 2023.  We affirm.

The trial court summarized the relevant facts adduced during the

September 29, 2022 suppression hearing as follows:

> On August 25, 2021, [Appellant] was scheduled to appear at a
> [m]agisterial [d]istrict [c]ourt in Clarion County[,
> Pennsylvania,] for a hearing at 10[:00] a.m.  On that date, at
> 10:15 a.m., [Appellant] called the district court office and
> indicated he would be late for his hearing because his car had
> a flat tire.  This message was relayed to Trooper Tyler Lauer
> (hereinafter "Trooper Lauer") who was present for the hearing
> with [Appellant.  Appellant] arrived at the court office at 10:25
> a.m.  Trooper Lauer [approached Appellant upon his arrival
> and] smell[ed] a strong odor of alcohol emitting from
> [Appellant] . . . and observed that [Appellant] could not remain
> still and had bloodshot eyes that were glassy.  Upon
> questioning, [Appellant] stated he drank alcohol the night
> before [but stopped] around 2:00 a.m.  Further, when asked

how he got to the court office, [Appellant] stated that his ex-wife was waiting with the car with the flat tire[, which Appellant claimed was along Route 66 near the court]. Trooper Lauer contacted [Pennsylvania State Police ("PSP")]-Clarion to request that a trooper check for the car and [Appellant's] ex-wife[.] PSP Clarion did not find either the car or [Appellant's] ex-wife along Route 66 near the court. When presented with this information, [Appellant] said his ex-wife must have taken the car to a tire shop. Trooper Lauer asked [Appellant] to call his ex-wife. [Appellant complied. When talking with Appellant's ex-wife,] Trooper Lauer asked [her] which tire shop she went to, and [Appellant's] ex-wife stated she was in Meadville, Pennsylvania, which is approximately one hour away from the court office where [Appellant] and Trooper Lauer were located. [After the telephone call with Appellant's ex-wife concluded, Appellant admitted that] he had a suspended license and did not want [to be seen] driving so he parked the car at Commodore Homes along Route 66 south of Amsler Avenue. [Appellant] further admitted he was getting his prescribed [m]ethadone dose in Erie[, Pennsylvania,] at 8:00 a.m. as the reason for being late to court.

Trooper Lauer said he suspected that [Appellant] was under the influence [of alcohol] so he asked [Appellant] if he was able to perform field sobriety tests. [Appellant agreed] and Trooper Lauer administered the [Horizontal Gaze Nystagmus ("HGN")], One Leg Turn, and Walk and Stand [tests]. According to Trooper Lauer, [Appellant] displayed signs of impairment. [In addition, Trooper Lauer asserted that,] during the tests[, Appellant] appeared disheveled and hyper [leading Trooper Lauer to believe that Appellant consumed something other than alcohol. As such,] Trooper Lauer asked if [Appellant] would submit to [Advanced Roadside Impairment Driving Enforcement ("ARIDE")] tests. [Appellant complied]. Trooper Lauer indicated that [Appellant] displayed signs of impairment on these tests as well. [Trooper Lauer then placed Appellant under arrest].

[Thereafter, Appellant] was transported to Clarion Hospital for a blood draw. On the way, [] Trooper [Lauer] took [Appellant] past Commodore Homes [and asked Appellant to identify his vehicle]. The vehicle was in the parking lot of Commodore Homes and identified by [Appellant]. It had a suspended registration for insurance cancellation. [When they arrived at

Clarion Hospital, Trooper Lauer administered the **O'Connell**[1] warnings to Appellant and Appellant consented to blood testing]. At 11:24 a.m., [Appellant] submitted to a blood test and tested positive for amphetamine and methadone. The test was negative for alcohol. [At 11:27 a.m., Trooper Lauer read Appellant his **Miranda**[2] rights].

Trial Court Opinion, 10/31/22, at *1-*3 (unpaginated) (footnotes added).

On October 20, 2021, Appellant was charged with driving under the influence ("DUI"): controlled substance – schedule II or III, careless driving, driving while operating privilege is suspended or revoked and vehicle registration suspended. On August 31, 2022, Appellant filed an omnibus pre-trial motion in which he argued that he was subjected to custodial

---

[1] The **O'Connell** warnings were first pronounced in **Commonwealth, Department of Transportation, Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873 (Pa. 1989). In a later opinion, our Supreme Court explained both the **O'Connell** warnings and the reasoning behind the warnings:

in order to guarantee that a motorist makes a knowing and conscious decision on whether to submit to testing or refuse and accept the consequence of losing his driving privileges, the police must advise the motorist that in making this decision, he does not have the right to speak with counsel, or anyone else, before submitting to chemical testing, and further, if the motorist exercises his right to remain silent as a basis for refusing to submit to testing, it will be considered a refusal and he will suffer the loss of his driving privileges[. T]he duty of the officer to provide the **O'Connell** warnings as described herein is triggered by the officer's request that the motorist submit to chemical sobriety testing, whether or not the motorist has first been advised of his **Miranda** rights.

**Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Scott**, 684 A.2d 539, 545 (Pa. 1996).

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

interrogation, necessitating the issuance of **Miranda** warnings from the inception of his encounter with Trooper Lauer. Hence, Appellant claimed that Trooper Lauer's failure to issue **Miranda** warnings until 11:27 a.m. warranted suppression of any admissions made by Appellant prior to that time. In addition, Appellant challenged the Commonwealth's *prima facie* case supporting the charge of DUI – controlled substance – schedule II or III. The trial court convened a hearing on Appellant's motion on September 29, 2022, during which Trooper Lauer testified. On October 31, 2022, the trial court denied Appellant's motion.

The matter proceeded to a jury trial on January 30, 2023, after which the jury convicted Appellant of DUI – controlled substance – schedule II or III.[3] After the jury was dismissed, the Commonwealth *nolle prossed* Appellant's remaining offenses. On March 15, 2023, the trial court sentenced Appellant to an aggregate term of 12 to 24 months' incarceration. Appellant filed a post-sentence motion on March 21, 2023, which the trial court denied on March 23, 2023. This timely appeal followed.

Appellant raises the following issues on appeal:[4]

1. Did the trial court err in denying [Appellant's] pre-trial suppression motion based on an illegal "search and seizure" of [Appellant], there being no reasonable suspicion or probable cause for the same?

---

[3] 75 Pa.C.S.A. §3802(d)(1)(ii).

[4] We have re-ordered Appellant's issues for ease of discussion and disposition.

2. Did the trial court err in denying [Appellant's] pre-trial suppression motion where any alleged statements or admissions by [Appellant] were obtained illegally, while under coercion or duress, in violation of his constitutional rights?

3. [Whether the Commonwealth presented sufficient evidence to sustain Appellant's conviction under 75 Pa.C.S.A. § 3802?]

4. Did the trial court err in denying [Appellant's] motion for judgment of acquittal at the close of the Commonwealth's case-in-chief where the Commonwealth failed to meet its burden of proof under 75 Pa.C.S.A. §3802[(D)(1)(ii)], to[-] wit, [Appellant] was driving with a [s]chedule II or III controlled substance in his system, not medically prescribed, when the Commonwealth offered no evidence to this effect?

***See generally*** Appellant's Brief at 4-6 (emphasis and superfluous capitalization omitted).[5]

In Appellant's first two issues, he challenges the trial court's suppression ruling. Initially, Appellant argues that the trial court erred in denying his motion to suppress because Trooper Lauer lacked the requisite level of

_____

[5] Appellant presents seven separate questions in his appellate brief. ***See*** Appellant's Brief at 4-6. Of these seven questions, several challenge the trial court's suppression rulings and three relate to Appellant's claim that the Commonwealth failed to prove its charge of DUI – controlled substance – schedule II or III. ***See id.*** The four-part argument section of Appellant's brief to this Court includes one section that challenges the sufficiency of the evidence introduced by the Commonwealth to prove the offense of DUI – controlled substance – schedule II or III. In this section, Appellant claims that the Commonwealth "did not meet its burden that [he] was operating or otherwise in control of a motor vehicle at a time when he had a controlled substance in his system." ***Id.*** at 15. Because Appellant's claim challenges the sufficiency of the evidence, we will limit our analysis accordingly and omit the inclusion of superfluous issues, except that we shall address Appellant's challenge to the trial court's suppression rulings as an initial matter.

suspicion to detain him at the magistrate's office and investigate whether he committed DUI. Appellant's Brief at 28. Next, Appellant argues that the trial court erred in concluding that Trooper Lauer's detention did not amount to a custodial interrogation, warranting the issuance of *Miranda* warnings. *Id.* at 35. Appellant therefore claims that the trial court erred in failing to suppress evidence, namely, Appellant's admission that he drove to the magisterial district judge's office on the day in question. *Id.* at 40. We address Appellant's interrelated claims together.

Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is

> limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.

> We may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

> Moreover, it is within the lower court's province to pass on the credibility of witnesses and determine the weight to be given to their testimony.

> Furthermore, our Supreme Court [has] clarified that the scope of review of orders granting or denying motions to suppress is limited to the evidence presented at the suppression hearing.

*Commonwealth v. Williams*, 176 A.3d 298, 315–316 (Pa. Super. 2017) (internal citations and quotations omitted).

Under Pennsylvania law, there are three categories of police-citizen interactions. As our Supreme Court has clearly articulated:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Gutierrez*, 36 A.3d 1104, 1107 (Pa. Super. 2012) (quotation omitted), *appeal denied*, 48 A.3d 1247 (Pa. 2012).

Further, this Court previously explained:

> [t]o determine whether a mere encounter rises to the level of an investigatory detention, we must discern whether, as a matter of law, the police conducted a seizure of the person involved. To decide whether a seizure has occurred, a court must consider all the circumstances surrounding the encounter to determine whether the demeanor and conduct of the police would have communicated to a reasonable person that he or she was not free to decline the officer's request or otherwise terminate the encounter. Thus, the focal point of our inquiry must be whether, considering the circumstances surrounding the incident, a reasonable person innocent of any crime, would have thought he was being restrained had he been in the defendant's shoes.

*Commonwealth v. Reppert*, 814 A.2d 1196, 1201-1202 (Pa. Super. 2002) (internal citations omitted).

"It is long-settled that *Miranda* warnings are only required for the third-level interaction, *i.e.*, custodial interrogation." *Commonwealth v. Spence*, 2023 WL 2002292 *1, *9 (Pa. Super. Feb. 15, 2023), *citing*

- 7 -

*Commonwealth v. Smith*, 836 A.2d 5 (Pa. 2003). This Court previously

explained:

> Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of her *Miranda* rights. *Commonwealth v. DiStefano*, 782 A.2d 574, 579 (Pa. Super. 2001), *appeal denied*, 806 A.2d 858 (Pa. 2002). Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." *Miranda*, *supra* at 444[. "T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006), *cert. denied*, 552 U.S. 939, (2007). Thus, "[i]nterrogation occurs where the police should know that their words or actions are reasonably likely to elicit an incriminating response from the suspect." *Commonwealth v. Ingram*, 814 A.2d 264, 271 (Pa. Super. 2002), *appeal denied*, 821 A.2d 586 (Pa. 2003). "[I]n evaluating whether *Miranda* warnings were necessary, a court must consider the totality of the circumstances. In conducting the inquiry, we must also keep in mind that not every statement made by an individual during a police encounter amounts to an interrogation. Volunteered or spontaneous utterances by an individual are admissible even without *Miranda* warnings." *Gaul*, *supra*.

> Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied of [her] freedom of action in any significant way or is placed in a situation in which [she] reasonably believes that [her] freedom of action or movement is restricted by the interrogation. Moreover, the test for custodial interrogation does not depend upon the subjective intent of the law enforcement officer interrogator. Rather, the test focuses on whether the individual being interrogated reasonably believes [her] freedom of action is being restricted.

> *Commonwealth v. Clayton Williams*, 650 A.2d 420, 427 (Pa. 1994) (internal citations omitted)[; *s*]*ee also Commonwealth v. Mannion*, 725 A.2d 196, 202 (Pa. Super. 1999) (*en banc*) (stating whether person is in custody for *Miranda* purposes

must be evaluated on case-by-case basis with due regard for facts involved); *Commonwealth v. Peters*, 642 A.2d 1126, 1130 (Pa. Super. 1994) (*en banc*), *appeal denied*, 649 A.2d 670 (Pa. 1994) (stating: "Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against [her] will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions"; fact that [the] defendant was [the] focus of investigation is relevant for determination of whether defendant was in "custody" but does not require *per se* *Miranda* warnings).

> Said another way, police detentions become custodial when, under the totality of the circumstances, the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of arrest.

*Mannion*, *supra* at 200. Thus, the ultimate inquiry for determining whether an individual is in custody for *Miranda* purposes is "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Commonwealth v. Pakacki*, 901 A.2d 983, 988 (Pa. 2006)[, *quoting* *Stansbury v. California*, 511 U.S. 318, 322 (1994)[]. Under the totality of the circumstances approach, the following factors are relevant to whether a detention has become so coercive as to constitute the functional equivalent of a formal arrest: "the basis for the detention; its length; its location; whether the suspect was transported against his or her will, how far, and why; whether restraints were used; whether the law enforcement officer showed, threatened or used force; and the investigative methods employed to confirm or dispel suspicions." *Commonwealth v. Levanduski*, 907 A.2d 3, 24 (Pa. Super. 2006) (*en banc*), *appeal denied*, 919 A.2d 955 (Pa. 2007).

*Commonwealth v. Williams*, 941 A.2d 14, 30–31 (Pa. Super. 2008)

(parallel citations omitted).

- 9 -

The testimony at Appellant's suppression hearing revealed the following. On August 25, 2021, Appellant was scheduled to appear in magisterial district court in Clarion County, Pennsylvania, at 10:00 a.m. regarding a separate matter. Trooper Lauer was also present at the magisterial district judge's office that day, in full uniform, as he was the arresting officer in the other matter. At 10:15 a.m., Appellant called the magisterial district judge's office and stated that "he [would] be late for court because he got a flat tire on his way to the hearing." N.T. Suppression Hearing, 9/29/22, at 4. This information was relayed to Trooper Lauer. Appellant eventually arrived at 10:25 a.m. Once Appellant arrived, Trooper Lauer approached Appellant in the lobby of the magisterial district court office in order "to talk to him about the [other] court matter." *Id.* at 5. Upon approach, Trooper Lauer smelled alcohol emanating from Appellant's person and noticed that Appellant appeared "hyper," "jittery," and "could [not] stand still." *Id.* at 7. Trooper Lauer then asked Appellant about his vehicle, specifically, "where the vehicle was [] that had broke[n] down and had the flat tire." *Id.* at 5. Appellant stated that the vehicle was "along Route 66, Paint Boulevard." *Id.* As such, Trooper Lauer contacted PSP Clarion to "check the area for the vehicle," but they were unable to locate the vehicle in that location. *Id.*

After learning that Appellant's vehicle was not in the location provided, Trooper Lauer asked Appellant "how [] he got to [the magisterial district court office]." *Id.* at 6. In response, Appellant claimed that "his ex-wife was [with] the vehicle" and "she must have got it fixed and headed to a tire shop locally."

*Id*. Trooper Lauer then directed Appellant to call his ex-wife and Appellant obliged. During the call, Appellant's ex-wife revealed that she was in Meadville, Pennsylvania, which is approximately one hour away from Clarion County. Thereafter, Trooper Lauer confronted Appellant, stating that, because his ex-wife admitted to being in Meadville, "there [was] no possible way his ex-wife could be [with his] vehicle." *Id*. at 10. At that time, Appellant admitted to driving to the magisterial district court office and informed Trooper Lauer that he parked the vehicle "at the trailer factory down the road" to avoid being seen driving due to his suspended license. *Id*. Upon further questioning by Trooper Lauer, Appellant also admitted that he drank alcohol that morning, estimating that "he quit drinking at [2:00 a.m.]." *Id*. at 11. Based upon all the foregoing, Trooper Lauer asked Appellant to submit to field testing, including the HGN, One Leg Turn, Walk and Stand, and ARIDE tests. Appellant exhibited signs of impairment on the aforementioned tests, prompting Trooper Lauer to place him under arrest and put him in handcuffs.

Following Appellant's arrest, Trooper Lauer transported him to Clarion Hospital for a blood draw. On the way, Trooper asked Appellant to show him where the vehicle was parked. Appellant complied. Once at the hospital, Trooper Lauer administered the *O'Connell* warnings to Appellant and Appellant consented to a blood draw, which occurred at 11:24 a.m. Then, at 11:27 a.m., after Appellant's blood draw, Trooper Lauer issued *Miranda* warnings to Appellant. Trooper Lauer then subjected Appellant to additional questioning, after which Appellant informed Trooper Lauer that he received

- 11 -

his prescribe dose of methadone from New Directions Health Care at 8:00 a.m. Appellant's blood tests indicated positive for amphetamine and methadone, but negative for alcohol. Trial Court Opinion, 10/31/22, at *3.

Upon review, we conclude that, when Trooper Lauer initially approached Appellant at the magisterial district judge's office, the interaction amounted to nothing more than a mere encounter. Indeed, Trooper Lauer specifically stated at the suppression hearing that, once Appellant arrived at the office, he approached Appellant "to talk to him about the [other] court matter," for which he was the arresting officer. N.T. Suppression Hearing, 9/29/22, at 5 and 24. No facts suggest that, upon doing so, Trooper Lauer acted coercively or spoke to Appellant in a forceful manner. To the contrary, the initial approach by Trooper Lauer typified a mere encounter, not an investigative detention. *See Commonwealth v. Collins*, 950 A.2d 1041, 1047 (Pa. Super. 2008).

"[D]uring the course of the encounter" between Trooper Lauer and Appellant, however, "the level of intrusion into [Appellant's] liberty [changed]." *Commonwealth v. Blair*, 860 A.2d 567, 572 (Pa. Super. 2004). Indeed, at the suppression hearing, Trooper Lauer testified that, after initially approaching Appellant, he detected alcohol emanating from Appellant's person and observed that Appellant was "hyper," "jittery," and "could [not] stand still." N.T. Suppression Hearing, 9/29/22, at 5 and 7. In addition, Trooper Lauer admitted that the odor caused him "to see if [Appellant] drove to court that day." *Id.* at 5. After Trooper Lauer detected the odor of alcohol,

and being aware that Appellant telephoned the magisterial district judge's office to say that he would be late to the hearing because he had a flat tire, Trooper Lauer's interaction with Appellant assumed a more probing posture and Appellant became the focus of an investigative detention. We must therefore determine whether, at this time, Trooper Lauer possessed the requisite justification, *i.e.*, reasonable suspicion that Appellant was engaged in criminal conduct.

This Court previously explained:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. "This standard, less stringent than probable cause, is commonly known as reasonable suspicion." In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give "due weight ... to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer."

*Commonwealth v. Raglin*, 178 A.3d 868, 872 (Pa. Super. 2018) (internal citations omitted), *quoting Commonwealth v. Rogers*, 849 A.2d 1185, 1189 (Pa. 2004).

We conclude that Trooper Lauer had reasonable suspicion to detain Appellant once he detected an odor of alcohol about Appellant's person. In particular, Trooper Lauer testified that, prior to his initial interaction with

Appellant, he became aware that Appellant called the magisterial district judge's office claiming he would be late for court because **he** got a flat tire on his way to the hearing. Based upon this statement, Trooper Lauer reasonably began to suspect that Appellant, himself, operated a vehicle on the morning in question. Moreover, after approaching Appellant upon his arrival at the magisterial district court office, Trooper Lauer detected alcohol emanating from Appellant's person and also observed that Appellant was "hyper," "jittery" and "could [not] stand still." N.T. Suppression Hearing, 9/29/22, at 5 and 7. This behavior, coupled with all of the circumstances of which the trooper was aware, was sufficient to provide Trooper Lauer with reasonable suspicion that Appellant operated a vehicle under the influence of alcohol or a controlled substance. As such, Trooper Lauer was justified in detaining Appellant as long "as [was] necessary to confirm or dispel [his reasonable] suspicion[s]." ***Commonwealth v. LeMonte***, 859 A.2d 495, 500 (Pa. Super. 2004). Thus, we reject Appellant's contention that Trooper Lauer detained him at the magisterial district court office in violation of his constitutional rights.

Moreover, we reject Appellant's contention that the initial phases of Trooper Lauer's detention constituted a custodial interrogation, warranting the issuance of ***Miranda*** warnings. To support his position, Appellant points to the fact that he was legally required to appear at the magisterial district court office for a summary trial involving another matter. Appellant's Brief at 37. This, per Appellant, restricted his "freedom of movement," rendering him in

custody for **Miranda** purposes. **Id.** at 35. We note, however, that the mere fact that Appellant was legally required to be at the magisterial district court office did not, in and of itself, elevate the encounter between him and Trooper Lauer to a custodial interrogation. **See Commonwealth v. Lidge**, 582 A.2d 383 (Pa. Super. 1990) (holding that the appellant was not seized because she was not restrained by physical force or a show of authority even though the encounter with police occurred at an airport). In addition, as noted by the trial court, there is no evidence that, from the initial phases of Appellant's interaction with Trooper Lauer until the point of Appellant's arrest, "the conditions and/or duration of the detention became so coercive as to constitute the functional equivalent of arrest." **Mannion**, 725 A.2d at 201; **see also** Trial Court Opinion, 10/31/22, at *6-*7 (unpaginated) (finding that Trooper Lauer did not "restrain[ Appellant] in any way" and "did not show or threaten the use of force and the investigative methods were to confirm or dispel suspicions of [Appellant] driving while intoxicated"). Because Appellant was not in custody at the time he first admitted to driving to the magisterial district court's office, **Miranda** warnings were not required.

We do, however, hold that the nature of the interaction shifted to a custodial interrogation, warranting the issuance of **Miranda** warnings, when Trooper Lauer placed Appellant under arrest at the conclusion of field sobriety testing. At the suppression hearing, Trooper Lauer testified that, after inquiring into how Appellant arrived at the magisterial district judge's office, Appellant eventually admitted to driving to the office and informed Trooper

Lauer that he parked the vehicle "at the trailer factory down the road" to avoid being seen driving because he had a suspended license. N.T. Suppression Hearing, 9/29/22, at 10. Based upon Appellant's statement, Trooper Lauer requested that Appellant submit to field sobriety tests, and Appellant complied. Appellant exhibited signs of impairment during the tests, and Trooper Lauer determined that probable cause existed to place Appellant under arrest for DUI. After the administration of field sobriety tests, but before Trooper Lauer issued Appellant *Miranda* warnings, Trooper Lauer transported Appellant to Clarion Hospital for a blood draw.[6] While Appellant was in the police vehicle, Trooper Lauer drove near the area in which Appellant admitted to parking the vehicle and asked Appellant to point out his vehicle. Appellant complied. As the Commonwealth concedes on appeal, after Trooper Lauer arrested Appellant, but before Appellant's arrival at the hospital and his receipt of *Miranda* warnings, Appellant was subjected to a custodial interrogation since Trooper Lauer could reasonably anticipate that his inquiries would elicit incriminating responses from Appellant. *See* Commonwealth's Brief at 12. Because Trooper Lauer did not administer Appellant's *Miranda* warnings until 11:27 a.m., after Appellant's arrest, interrogation, and

_____

[6] To be clear, we conclude, based upon the totality of circumstances, that Appellant was subject to a custodial arrest at the moment Trooper Lauer transported him from the magisterial district court office to the hospital to conduct a blood draw. We further conclude that Appellant's arrest was supported by probable cause, as established by Appellant's prior admissions, his observed appearance and odor, and his poor performance on field sobriety tests.

transportation to Clarion Hospital, we conclude that Appellant's identification of the vehicle's location was obtained in violation of *Miranda* and subject to suppression.

"A suppression court's error in failing to suppress statements by the accused, however, will not require reversal if the Commonwealth can establish beyond a reasonable doubt that the error was harmless." *Commonwealth v. Frein*, 206 A.3d 1049, 1070 (Pa. 2019) (citation omitted). "*Miranda* violations are subject to this harmless error rule." *Id.* (citation omitted).

> Harmless error exists if the Commonwealth proves that (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* (citation omitted).

Upon review of the record of this case, we conclude that Appellant's statement in which he identified the location of his parked vehicle was harmless because it was "merely cumulative of other [substantially similar] untainted evidence." *Id.* In particular, the Commonwealth at trial established that, prior to Appellant's arrest, he voluntarily admitted to driving the vehicle to the magisterial district judge's office, even though his license was suspended. *See* N.T. Trial 1/30/23, at 50-51. Appellant's specific identification of the location of his vehicle for Trooper Lauer was therefore

- 17 -

substantially similar to his own admission which was testified to by Trooper Lauer during trial. We therefore conclude that the admission of Appellant's statement of identification was harmless and Appellant is not entitled to relief.[7] *Compare Commonwealth v. Rivera*, 296 A.3d 1141, 1160-1161 (Pa. 2023) (holding that the erroneous admission of the appellant's post-arrest silence was not harmless because it was not "'merely cumulative' of other evidence introduced at trial" and because the "properly admitted and uncontradicted evidence of guilt" was not "so overwhelming," rendering "the prejudicial effect of the error . . . insignificant") (citation omitted).

In Appellant's third and fourth issues, he argues that the Commonwealth failed to present sufficient evidence supporting his conviction for DUI – controlled substance – schedule II or III. In particular, Appellant claims that the Commonwealth failed to demonstrate that he "was operating or otherwise in control of a motor vehicle at a time when he had a controlled substance in his system." Appellant's Brief at 15. Similarly, in his final issue, Appellant claims that the Commonwealth failed to prove that the amphetamines in his system were not medically prescribed and, as such, an illegal substance. *Id.* at 40. Upon review, we conclude that Appellant's claims lack merit.

---

[7] We note that the results of Appellant's blood draw are not subject to suppression as a result of a Fifth Amendment violation, even though the blood draw was completed prior to Trooper Lauer's administration of *Miranda* warnings to Appellant. *See Schmerber v. California*, 384 U.S. 757, 765 (1966) (holding that "the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds").

This Court previously explained:

> Our standard of review in a sufficiency of the evidence challenge is to determine if the Commonwealth established beyond a reasonable doubt each of the elements of the offense, considering all the evidence admitted at trial, and drawing all reasonable inferences therefrom in favor of the Commonwealth as the verdict-winner. The trier of fact bears the responsibility of assessing the credibility of the witnesses and weighing the evidence presented. In doing so, the trier of fact is free to believe all, part, or none of the evidence.

***Commonwealth v. Newton***, 994 A.2d 1127, 1131 (Pa. Super. 2010) (quotation omitted), *appeal denied*, 8 A.3d 898 (Pa. 2010).

Section 3802(d)(1) of the Vehicle Code, in relevant part, states:

> (d) Controlled substances.--An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
>> (1) There is in the individual's blood any amount of a:
>>
>>> (ii) Schedule II or Schedule III controlled substance, as defined in The Controlled Substance, Drug, Device and Cosmetic Act, which has not been medically prescribed for the individual[.]

75 Pa.C.S.A. § 3802(d)(1)(ii).

Importantly,

> "[t]he term 'operate' requires evidence of actual physical control of either the machinery of the motor vehicle or the management of the vehicle's movement, but not evidence that the vehicle was in motion." ***Commonwealth v. Johnson***, 833 A.2d 260, 263 (Pa. Super. 2003). "Our precedent indicates that a combination of the following factors is required in determining whether a person had 'actual physical control' of an automobile: the motor running, the location of the vehicle, and additional evidence showing that the defendant had driven the vehicle." ***Commonwealth v. Woodruff***, 668 A.2d 1158, 1161 (1995).

A determination of actual physical control of a vehicle is based upon the totality of the circumstances. [***Commonwealth v. Williams***, 871 A.2d 254, 259 (Pa. Super. 2005)].

***Commonwealth v. Brotherson***, 888 A.2d 901, 904-905 (Pa. Super. 2005) (parallel citations omitted).

Upon review, we conclude that the Commonwealth presented sufficient evidence to support Appellant's conviction for DUI - controlled substance – schedule II or III. Initially, we note that, in contrast to Appellant's claim, the Commonwealth's evidence demonstrated that he, himself, drove to the magistrate's office on the day in question. Indeed, at trial, the Commonwealth presented evidence that Appellant arrived at the magisterial district court office by himself and that Appellant admitted to driving to the hearing. N.T. Trial, 1/30/23, at 44-47 and 50-51. Moreover, the Commonwealth presented evidence that Appellant was under the influence at the time he drove to the magistrate's office. First, the Commonwealth introduced evidence of Appellant's blood test results taken on August 25, 2021, which revealed the presence of amphetamines in his system. ***See*** N.T Trial, 1/30/23, at 57-60; ***see also*** N.M.S. Labs Toxicology Report (Commonwealth's Exhibit 1). Second, Trooper Lauer testified that, after receiving ***Miranda*** warnings, Appellant admitted that he did not ingest any other substance "in between when he parked [his] car and got to the [magistrate's office]." N.T. Trial, 1/30/23, at 61. We therefore conclude that the foregoing evidence demonstrated that Appellant drove his vehicle to the magistrate's office while under the influence of amphetamines and, as such, was sufficient to support

Appellant's conviction for DUI - controlled substance – schedule II or III. **See**

**Commonwealth v. Fallon**, 275 A.3d 1099, 1106-1107 (Pa. Super. 2022)

(holding that the Commonwealth presented sufficient evidence that the

appellant drove, operated or was in actual physical control of the vehicle while

intoxicated when it presented evidence that, *inter alia*, he admitted to driving

after consuming a six-pack of beer and that the residence was not accessible

by public transportation).

In this same vein, Appellant's contention that his conviction was not

supported by sufficient evidence because the Commonwealth failed to

demonstrate that the amphetamines found in his system here not medically

prescribed lacks merit. In **Commonwealth v. Sojourner**, 408 A.2d 1108

(Pa. Super. 1979), this Court addressed a similar claim lodged under the

Controlled Substance, Drug, Device and Cosmetic Act. Importantly, we held

that, before the Commonwealth was required to disprove that a defendant

was authorized to possess narcotics, the defendant needed to come forward

with credible evidence of authorization. **Id**. at 1114-1115. Importantly, this

very concept was recently upheld by a panel of this Court. **See**

**Commonwealth v. Smith**, 2018 WL 3358610, *1, *3 (Pa. Super. July 10,

2018) (unpublished memorandum) (holding that, because the appellant did

not "come forward with evidence that he possessed a prescription for

oxycodone," the Commonwealth was not required to "disprove his

authorization for the drug"). Thus, contrary to Appellant's assertion, he was

required to come forward with some proof that he possessed a prescription

for amphetamines before the Commonwealth was required to disprove his authorization to possess the drug. Appellant, however, only claimed to have an authorized prescription for methadone, not amphetamines. N.T. Trial, 1/30/23, at 61. Hence, the Commonwealth was not required to present evidence to disprove that element of the offense.

Judgment of sentence affirmed.

Judgment Entered.



Benjamin D. Kohler, Esq.
Prothonotary

FILED: 3/5/2024